UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

          Plaintiff,

v.

WILLIAM MICHAEL JOHNSON,

          Defendant.
_____/

Case No.  1:13-CR-214

Honorable Robert Holmes Bell
United States District Judge

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, BRIEF IN SUPPORT, AND REQUEST FOR HEARING**

    William Michael Johnson is charged in a two-count indictment.  Count one charges Mr. Johnson with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, § 841(a)(1) and (b)(1)(B)(viii); count two charges him with possession with intent to distribute methamphetamine in violation of 18 U.S.C. § 841(a)(1), § 841(b)(1)(B)(viii), and § 2.  Through his attorney, Sharon A. Turek, First Assistant Federal Public Defender, the defendant hereby moves for the suppression of evidence in this case, because the evidence was obtained in violation of his Fourth Amendment Rights.  Mr. Johnson also requests a hearing.

**Relevant Facts**

The following facts have been gleaned from the indictment filed in this case, the affidavits in support of two search warrants, and police reports that have been provided.

On August 16, 2013, postal inspectors were in Kalamazoo, Michigan area profiling packages (See Attachment 1: Paragraph 8, Search Warrant to open Express Mail Parcel). The postal inspectors removed the envelope from the mail stream for further investigation. Some time later, the Michigan State Police were contacted and asked to have a police dog that was trained to find drugs come over to the Grand Rapids mail center. When the police dog indicated that drugs were in the envelope, the first search warrant was obtained to allow the postal inspector to open it. After finding drugs in the envelope, it was rewrapped and delivered to Rachel Stuart, 25039 West US-12, Lot #74, Sturgis, Michigan, 49091, the address on the envelope. The second search warrant, an anticipatory search warrant, was also obtained so that shortly after the envelope was delivered to the 25039 West-US 12 address the police could search the home. The rewrapped envelope was found in the master bedroom on the floor during the search.

The envelope in question had a return address of Dana Wilmeth, 1780 W. Mary Jane Lane, Glendale, AZ 85303. The package was sent using an Express mail envelope. The envelope was given the tracking number E1752943945US and further described in the affidavit in support of the warrant to open the envelope as follows:

Express Flat Rate Envelope
Weighing 1pound and 2.4 ounces

>Measuring 12-1/2" X 9-1/2"
>Bearing $19.95 in postage and fees
>Addressed to a Rachel Stuart, 25039 West US-12#74, Sturgis, MI 49091
>A Return Address of Dana Wilmeth, 1780 W. Mary Jane Lane, Glendale, AZ

According to the affidavit in support of the first search warrant for permission to open the Express Mail envelope, the envelope was removed from the mail because of certain characteristics. Specifically, it weighed more than eight ounces, it bore a handwritten label, it did not have a business account number, it was addressed from an individual to an individual, the envelope had a fictitious return address, and it was mailed from the Phoenix, AZ area which is a known narcotic source location. (See Attachment 1: Paragraph 7, Search Warrant to open Express Mail Envelope).

After removing the envelope from the mail stream, the postal inspector stated that per law enforcement databases that the sender's purported name, Dana Wilmeth, was not associated with the Arizona address. It was also discovered that the 1780 W. Mary Jane Lane address itself did not appear to be a valid address. The same databases were used to see if Rachel Stuart was connected to the 25039 W US-12 address, and it was discovered that Ms. Stuart was associated with that address. It was then arranged for a police dog trained to detect drugs to come in and check the envelope for the presence of drugs. "Yaro" the police dog indicated that drugs were likely in the envelope. A search warrant was then obtained giving the postal inspectors permission to open the envelope. Approximately one ounce of methamphetamine was found in the Express Mail envelope.

After checking LEIN, a law enforcement database, officers found that Ms. Stuart had been the subject of previous narcotics investigations. Officers also discovered Mr. Michael Lord, who is also registered to the 25039 W US-12 address, also has an extensive criminal history of felony drug crimes including methamphetamine.

A postal inspector posing as a postal carrier then knocked on the door at 25039 West US-12, #74, Sturgis, Michigan. Ms. Rachel Stuart and Mr. Michael Lord both live at this residence. A woman, later determined to be Ms. Amy Waldron, answered the door. The postal inspector asked the woman if she was Rachel, and the woman replied that she was, signed for the envelope as Rachel Stuart, and entered the residence with the envelope in her hand. Shortly thereafter, authorities entered the home to execute the anticipatory warrant that had been obtained. Many individuals were found in the home, including Ms. Rachel Stuart, Ms. Amy Waldron, and the defendant, Mr. William Johnson. The envelope was found in the master bedroom on the floor. Approximately 29.64 grams of methamphetamine and $7,108.00 were among the items seized during the search of the home.

Mr. Johnson, a friend of Ms. Stuart's, admits that before the package had been delivered to the Stuart address, he had called the post office to check on the status of the envelope, had filled out a search request online, and had actually received a return call from the post office when the envelope was out for delivery.

**Argument**

**The postal inspector lacked reasonable suspicion to initially seize the envelope and take it out of the mail stream.**

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV; *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010). It has long been held that first-class mail such as letters and sealed packages subject to letter postage...is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment. *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970). In *Van Leeuwen*, the Supreme Court held that mail may be detained so long as there is a reasonable suspicion of criminal activity. *Id*. at 252. In the *Van Leeuwen* case, the defendant had mailed two packages containing illegal coins. A postal employee contacted the police saying that he thought the packages were suspicious. The Supreme Court held that the nature and weight of the packages, and the fact that the return address was fictitious justified detention [of the packages] without warrant, while an investigation was made. *Id*. at 252. Following *Van Leeuwen*, the Sixth Circuit has held that "only reasonable suspicion, and not probable cause, is necessary in order to briefly detain a package for further investigation, such as examination by a drug-sniffing dog." *United States v. Robinson*, 390 F3d 853, 870 (6th Cir. 2004).

In the instant case, the defendant argues that any evidence seized in this case should be suppressed because the original seizure and detention of the envelope constitutes an illegal search and seizure under the Fourth Amendment. The defendant argues that the postal inspector did not have a reasonable suspicion warranting taking the envelope out of the mail

5

stream. At the point of seizure, the postal inspector cited the reasons why the envelope was initially seized. He claimed that the envelope weighed more than eight ounces, it bore a handwritten label, it did not have a business account number, it was addressed from an individual to an individual, it had a fictitious return address, and it was mailed from the Phoenix, AZ area which is a known narcotic source location. (See Attachment 1: Paragraph 7, Search Warrant to open Express Mail Envelope). After seizing the envelope and upon further inspection including having a trained service dog sniff the envelope and indicate for the presence of drugs, the postal inspector requested that a search warrant be authorized so that the Express Mail envelope could be opened. Drugs were found in the envelope.

In order to combat the transportation of illegal drugs through the mails, the Postal Service has developed what is referred to as a "drug package profile." The drug package profile is meant to target those packages that have certain characteristics encountered in mailings found to contain drugs. "These characteristics include: (1) the size and shape of the mailing; (2) whether the package is taped to seal all openings; (3) whether the mailing labels are handwritten; (4) whether the return address is suspicious (e.g., the return addressee and the return address do not match, or the return address is fictitious); (5)unusual odors coming from the package; (6) whether the city of origin and/or city of destination of the package are common "drug source" locales; and (7) whether there have been repeated mailings involving the same sender and addressee." *United States v. Underwood*. No. 95-5441, 1996 WL 536976, at *3(6th Cir. Sept. 20, 1996); see also *United States v. Daniel*, 982 F 2d 146, 150

n.5 (5th Cir. 1993); *United States v. Lux*, 905 F.2d 1379, 1380 n.1 (10th Cir. 1990). Although this circuit has not adopted the Postal Service's "drug package profile" as the test for reasonable suspicion, it has found reasonable suspicion where the package smelled of marijuana, had a return address from a known distribution area, and had handwritten labels. *United States v. Alexander*, 540 F. 3d 494, 501 (6th Cir. 2008) citing *United States v. Robinson*, 390 F3d 853, 859 (96th Cir. 2004). Other courts have also held that the presence of an aggregate of profile factors satisfies the *Terry* doctrine. *Underwood* at *3.

    In the instant case, the postal inspector's initial act of seizing the envelope and taking it out of the mail stream was unreasonable. In a sworn affidavit, the postal inspector noted that because the envelope weighed more than eight ounces, bore a handwritten label, did not have a business account number, was addressed from an individual to an individual, had a fictitious return address, and was mailed from the Phoenix, AZ area constituted the basis for the decision to seize the envelope. This would mean that it would be reasonable for all envelopes mailed with handwritten addresses from any one individual from the Phoenix area that weighed more than eight ounces would be subject to a seizure. Such an overly-broad interpretation of reasonable suspicion is unreasonable. Reasonable suspicion must be based on specific and articulable facts that would reasonably justify an intrusion. *Terry v. Ohio*, 392 U.S. 1, 21(1968).

**Conclusion**

In conclusion, the initial seizure of the envelope was unreasonable as it is not supported by reasonable suspicion.  All of the evidence seized in this case is the product of an illegal seizure and should be suppressed as fruit of the poisonous tree.  See *Wong Sun v. United States*, 371 U.S. 471(1963); see also *Johnson*, 620 F.3d at 690.

                                              Respectfully submitted,

                                              RAY KENT
                                              Federal Public Defender


                                              /s/ Sharon A. Turek
                                              First Assistant Federal Public Defender
                                              50 Louis, NW, Suite 300
                                              Grand Rapids, MI 49503
Dated: May 13, 2014                       (616)742-7420